**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| WHOLESALE ALLIANCE, LLC d/b/a   ) | |
| PHARMACY FIRST,   ) | |
|   ) | |
|      Plaintiff,   ) | Case No.  4:18-cv-1015 |
|   ) | |
| v.   ) | **JURY TRIAL DEMANDED** |
|   ) | |
| EXPRESS SCRIPTS, INC.,   ) | |
|   ) | |
|      Defendant.   ) | |

## COMPLAINT

COMES NOW, Plaintiff Wholesale Alliance, LLC d/b/a Pharmacy First ("Plaintiff" or "Pharmacy First"), by and through undersigned counsel, and for its Complaint against Defendant Express Scripts, Inc. ("Defendant" or "Express Scripts"), states as follows:

## INTRODUCTION

1.      Pharmacy First, a pharmacy services administrative organization ("PSAO"), brings this action both to halt Express Scripts' unlawful manipulation of, and suppression of competition in, the market for PSAO services—which pharmacies, especially independent pharmacies, need to provide competitive, quality, and accessible pharmacy services to their patients—and to recover damages for the harm caused to Pharmacy First by Express Scripts' unlawful and anti-competitive conduct. PSAO services include operational support, revenue management, reviewing and processing claim remittances, quality enhancement, and contracting on behalf of independent pharmacies with third-party payers and pharmacy benefit managers. PSAO services help make independent pharmacies competitive and contribute to the improvement of independent pharmacies' operations and patient outcomes.

2.     Express Scripts, the self-proclaimed "largest pharmacy benefit manager" in the nation, has entered into an exclusive arrangement with four of the approximately 22 PSAOs nationwide.

3.     Pursuant to that exclusive arrangement, Express Scripts has terminated its relationship with Pharmacy First and other PSAOs and is essentially forcing pharmacies, especially independent pharmacies, wishing to access Express Scripts' expansive networks of 83 million or more members to use the PSAO services of one of Express Scripts' select four PSAOs.

4.     Express Scripts' exclusionary and coercive arrangement has caused, and will continue to cause, a reduction in the availability, quality, and output of PSAO services to pharmacies through, among things: (i) foreclosing Pharmacy First and other PSAOs from accessing Express Scripts' expansive networks, an essential resource for PSAOs and the pharmacies they represent; (ii) providing the four Express Scripts-selected PSAOs with exclusive access to Express Scripts' networks; (iii) denying pharmacies in need of PSAO services an open and competitive market for the same; and (iv) precluding pharmacies from freely choosing a PSAO that will best represent the objectives and interests of the pharmacies and their patients.

5.     The probable effect of Express Scripts' conduct will be to squeeze PSAOs like Pharmacy First out of the market.  This will have the effect ultimately of increasing the market power of the surviving participants in the PSAO market, lead to increased costs to and greater burdens on independent pharmacies, and jeopardize the ability of independent pharmacies to remain competitive participants in the pharmacy market and provide quality and accessible pharmacy services to their patients.

6.     Express Scripts' anti-competitive conduct has also harmed, and will continue to harm, Pharmacy First by causing pharmacies who have already affiliated with it, or would affiliate

with it prospectively, to instead affiliate with one of Express Scripts' four select PSAOs or otherwise take their business elsewhere.

7.      Accordingly, Pharmacy First brings this action to halt Express Scripts' anti-competitive conduct and recover the damages already inflicted, and that will continue to be inflicted, thereby.

## PARTIES

8.      Plaintiff Pharmacy First, a Delaware limited liability company with its principal place of business in Overland Park, Kansas, is a full-service PSAO that provides support services to approximately 2,300 independent pharmacies nationwide. Those services include contracting with third-party payers and pharmacy benefit managers on behalf of affiliated pharmacies, operational support, revenue management, reviewing and processing claim remittances, and quality enhancement.

9.      Defendant Express Scripts, a Delaware corporation with its principal place of business in St. Louis, Missouri, is the largest and most dominant PBM in the country. Express Scripts provides PBM services to various third-party payers, including managing prescription drug benefits, processing pharmacy claims, contracting with pharmacies, and formulary management.

10.     Express Scripts also owns and operates a mail-order pharmacy and various specialty pharmacies, including Accredo Health Group, Inc. and Freedom Fertility Pharmacy, that provide pharmacy services to patients nationwide.

11.     The provision and sale of prescription drugs and other pharmacy services to millions of patients throughout the country, and Express Scripts' management of those prescription drug benefits and administration of related claims, are in, and have an effect on, the regular, continuous, and substantial flow of interstate commerce.

## JURISDICTION AND VENUE

12.     Plaintiff Pharmacy First brings this action, in part, pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages, injunctive relief, and the costs of this suit, including reasonable attorneys' fees, for Defendant Express Scripts' violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

13.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1337 because Plaintiff Pharmacy First asserts claims arising under Section 1 of the Sherman Act, 15 U.S.C. § 15.   This Court has jurisdiction over claims arising under state law pursuant to the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

14.     Venue is proper under Section 12 of the Clayton Act, 15 U.S.C. § 22, and under 28 U.S.C. § 1391, in that, among other things, the Defendant Express Scripts resides, can be found, and transacts business in this District. As part of its dominant market power, Express Scripts requires parties that do business with it to submit to venue and jurisdiction in this district.

15.     Express Scripts is subject to general and specific personal jurisdiction in Missouri because it is incorporated in this state, has its principal place of business in this state, and engaged in some or all of the illegal and tortious acts alleged herein in this state.

## GENERAL ALLEGATIONS

### Independent Pharmacies

16.     There are roughly 22,000 independent pharmacies nationwide, representing approximately 36 percent of the pharmacy market in the United States and employing 250,000 individuals.  Independent pharmacies represent a much higher percentage of the pharmacy market in many states and communities, and are the only viable option for retail pharmacy services in many rural communities.

17.     Independent pharmacies play an important role in the pharmacy market that benefits patients: (i) they provide an alternative to chain pharmacies and PBM-owned mail-order pharmacies, thereby expanding patient choice and preserving competition; (ii) they provide pharmacy services to areas that are traditionally underserved by chain pharmacies, including rural communities; and (iii) they offer individualized patient-care services not readily available in chain and mail-order pharmacies, such as patient education, prescription compliance, dosage and usage guidance, and face-to-face medication counseling.

18.     To stay in business in today's market, independent pharmacies must gain and maintain access to insured patients. To obtain such access, pharmacies must enter into contracts with PBMs, because PBMs manage the prescription drug benefits of approximately 90 to 95 percent of Americans with insurance covering prescription drugs, amounting to over hundreds of millions of covered lives.

19.     Dealing with PBMs, however, imposes time-consuming and sometimes complex administrative tasks on pharmacies, including contract review, contract negotiations on various topics including reimbursement rates and payment terms, credentialing, electronic claim submission, reconciliation of claims remittances, and responding to audits.

20.     Independent pharmacies are typically unable to effectively and competitively transact business with PBMs on their own, and so look externally, to companies like PSAOs, for support.

### Pharmacy Services Administrative Organizations (PSAOs)

21.     PSAOs like Pharmacy First provide the support services that pharmacies, especially independent pharmacies, need to stay in business and compete in the pharmacy services market.

22.      There are approximately 22 PSAOs nationwide serving approximately 18,000 to 19,000 independent pharmacies, 80 percent or more of all such pharmacies in the United States market.

23.      PSAOs provide various different services to pharmacies, including, among others: (i) negotiating contracts with PBMs, including provisions such as reimbursement rates, audit provisions, appeals processes, and administrative requirements; (ii) contract credentialing and compliance; (iii) on-call customer support; (iv) central payment and reconciliation services; and (v) audit assistance.

## Pharmacy Benefit Managers (PBMs)

24.      PBMs administer the prescription drug programs of third-party payers that provide such benefits to their members and constituents, including commercial health plans, self-insured employer plans, Medicare Part D plans, the Federal Employees Health Benefits Program, and various state government employee plans.

25.      As such, PBMs provide various services to those third-party payers, including developing and maintaining drug formularies, contracting with pharmacies, and processing and paying prescription drug claims.

26.      On information and belief, PBMs manage the prescription drug benefits of approximately 90 to 95 percent of Americans with prescription drug coverage.

27.      On information and belief, the three largest PBMs, CVS-Caremark, Express Scripts, and OptumRx, control between approximately 70 to 85 percent of the PBM market nationwide, and, in some cases, an even higher percentage of the market in various communities throughout the country, including rural communities.

28.      On information and belief, Express Scripts controls between 30 and 50 percent of the PBM market.

**Pharmacy First's Relationship with Express Scripts**

29.     On or about October 4, 2013, Pharmacy First and Express Scripts entered into the Amended and Restated PSAO Services Agreement (the "PSAO Services Agreement"), a copy of which is attached hereto as Exhibit A and incorporated herein by reference.[1]

30.     Pursuant to the PSAO Services Agreement, Express Scripts recognized Pharmacy First as a PSAO authorized to act on behalf of its affiliated pharmacies to negotiate networks participation terms and conditions on their behalf, including reimbursement rates and other participation obligations, and to provide other services to such pharmacies.

31.     Also pursuant to that PSAO Services Agreement, Express Scripts and Pharmacy First entered into the Express Scripts, Inc. Pharmacy Provider Agreement (the "PSAO Provider Agreement"), under which pharmacies affiliated with Pharmacy First would participate in, and provide prescription drugs and pharmacy services to, Express Scripts' networks of individuals with prescription drug benefits.

32.     Thereafter, pharmacies, especially independent pharmacies, affiliated with Pharmacy First as their PSAO and, through Pharmacy First, gained access to Express Scripts' networks of 83 million or more individuals with prescription drug benefits.

**Express Scripts' Capture and Consolidation of the PSAO Market**

33.     Beginning in or around February 2018—even though the PSAO Services Agreement was still in place and effective—and continuing thereafter, Express Scripts began taking actions to interfere with Pharmacy First's rights under that Agreement and its relationships with its affiliated pharmacies, including: (i) refusing to accept new pharmacies into the Express

---

[1] Because the PSAO Services Agreement contains certain confidentiality provisions, Pharmacy First does not submit a copy of the Agreement with the Complaint at this time, but will seek leave to file it under seal as an exhibit to this Complaint.

Scripts networks through Pharmacy First; (ii) communicating to pharmacies affiliated with Pharmacy First and pharmacies attempting to affiliate with Pharmacy First that they should contract with one of the four Express Scripts-selected PSAOs to maintain access to Express Scripts' networks; (iii) communicating to pharmacies affiliated with Pharmacy First that Pharmacy First will no longer be affiliated with Express Scripts; and (iv) communicating to pharmacies that Express Scripts will no longer recognize Pharmacy First as a provider of reconciliation services to its pharmacies.

34.     For example, in a February 2018 communication to a pharmacy attempting to access Express Scripts' networks through Pharmacy First, Express Scripts advised the pharmacy that Pharmacy First will no longer be contracted with Express Scripts, and that Express Scripts will contract with only four PSAOs in the future.

35.     By way of further example, in another February 2018 communication to a pharmacy affiliated with Pharmacy First, Express Scripts advised the pharmacy that: (i) to continue servicing members without disruption, the pharmacy should affiliate with one of the four Express Scripts' recognized PSAOs; and (ii) the pharmacy could continue accessing Express Scripts' networks by contracting directly with Express Scripts, rather than affiliating with one of the four PSAOs, but doing so may preclude the pharmacy from having access to all of the Express Scripts' networks to which the pharmacy currently has access.

36.     In a May 2018 communication to a pharmacy affiliated with Pharmacy First, Express Scripts advised the pharmacy that, among other things: (i) Express Scripts had decided to contract with only four PSAOs going forward, and, as a result, Express Scripts will no longer work with Pharmacy First, either as a PSAO or as a reconciliation vendor, effective June 29, 2018; (ii) the pharmacy will soon begin directly receiving paper remittance advice and payments for

8

prescriptions via check, rather than receiving them electronically through Pharmacy First; and (iii) pharmacies can elect to receive electronic remittance advice and payments either (a) directly, by completing certain forms, or (b) by affiliating and doing business with one of the four Express Scripts' selected PSAOs or one of the five Express Scripts' selected reconciliation vendors.

37.     While claiming to offer a direct-contract option, Express Scripts imposes non-negotiable and punitively-low reimbursement rates on pharmacies attempting to pursue that option, imposes additional fees on those pharmacies, and narrows the field of reconciliation vendors those pharmacies can use in connection with remittances from Express Scripts, thus rendering direct contact not viable for independent pharmacies in the medium and long term.

38.     On or about March 11, 2018, Express Scripts sent a letter to Pharmacy First (sometimes referred to as Third Party Station) purporting to terminate the PSAO Services Agreement without cause, effective June 29, 2018, on which date Pharmacy First "shall no longer be a recognized PSAO with Express Scripts." A true and accurate copy of that March 11, 2018 letter is attached hereto as Exhibit B.

39.     Express Scripts' purported termination of Pharmacy First, and all but four of the other PSAOs with which it previously dealt, was the result of an agreement and other agreements reached between Express Scripts and four PSAOs that Express Scripts determined "best align" with its "organizational objectives" and "meet" Express Scripts' "terms and conditions", rather than the objectives and interests of pharmacies and their patients.

40.     Pursuant to that agreement and other agreements, those PSAOs are the only four recognized by Express Scripts and the exclusive providers of PSAOs services to pharmacies wishing to access Express Scripts' networks.

41.     By entering into an agreement and other agreements with those four PSAOs and using them to achieve Express Scripts' "organizational objectives" and implement Express Scripts' "terms and conditions", Express Scripts has transformed the PSAOs from pharmacy advocates into agents of Express Scripts.

42.     Express Scripts is taking steps to drive pharmacies into its select four PSAOs by, among other things, imposing the following on pharmacies attempting to access Express Scripts' networks directly (rather than through a PSAO): (i) punitively-low and non-negotiable reimbursement rates; (ii) fees; (iii) network restrictions; (iv) additional administrative burdens; and (v) a narrowed list of Express Scripts' selected reconciliation vendors that can be used to process electronic remittance advice from Express Scripts.

43.     As a direct and proximate result of Express Scripts' conduct, Pharmacy First has lost pharmacies with which it was previously affiliated and did business, has lost pharmacies that would have affiliated with it and would have done business with it, and will continue to lose more if Express Scripts' conduct is not enjoined.

44.     Pursuant to the communications set forth in the correspondence attached hereto as Exhibit C and incorporated herein by reference, the "Dispute Resolution" provision of the PSAO Services Agreement has been satisfied.[2]

### COUNT I
**Contract or Combination in Violation of the Sherman Act, 15 U.S.C. § 1**

45.     Pharmacy First incorporates by reference as though fully set forth herein all of the above paragraphs of the Complaint.

---

[2] Because the PSAO Services Agreement contains certain confidentiality provisions, Pharmacy First does not file copies of its correspondence with Express Scripts at this time, but will seek leave to file them under seal as an exhibit to this Complaint.

46.     Express Scripts entered into an exclusive agreement and various exclusive agreements with four PSAOs pursuant to which Express Scripts will allow only those four PSAOs to access its networks of approximately 83 million or more individuals with prescription drug benefits, and that foreclose other, competing PSAOs from accessing Express Scripts' networks on behalf of their affiliated pharmacies.

47.     Express Scripts has dominant market power in the United States market for prescription drugs and pharmacy services reimbursed by insurance, and thus also has substantial market power in and over the national market for PSAO services insofar as PSAOs access networks of individuals with prescription drug benefits on behalf of the PSAOs' affiliated pharmacies.

48.     Express Scripts has such dominant market power because, among things:

a)      Express Scripts controls and manages the prescription drug benefits for, and thus controls access by PSAOs and pharmacies to, approximately 83 million or more individuals, comprising between 30 and 50 percent of PBM market;

b)      PSAOs and pharmacies cannot readily access, or access at all, the individuals in Express Scripts' networks through other means;

c)      access to the individuals in Express Scripts' networks is essential to PSAOs and pharmacies, because PSAOs and pharmacies must access patients with prescription drug benefits in order to compete in the pharmacy market, and there is no reasonably interchangeable substitute readily available for those 83 million or more individuals whose prescription drug benefits are administered by Express Scripts; and

d)      given the high degree of concentration and consolidation, high entry barriers, and other characteristics of the PBM market, it is difficult for existing or new PBMs to compete with Express Scripts in administering the prescription drug benefits of the 83 million or more individuals in Express Scripts' networks.

49.     The agreement and other agreements between Express Scripts and the four PSAOs have substantially harmed, and will continue to substantially harm, competition in the market for PSAO services by decreasing the availability, quality, and output of PSAO services in at least the

following ways:

a)  foreclosing Pharmacy First and at least 17 or more other PSAOs from accessing Express Scripts' expansive networks of approximately 83 million or more individuals, an essential resource for PSAOs seeking to provide services to pharmacies, and thereby restraining the ability of Pharmacy First and those PSAOs to compete in the PSAO services market;

b)  providing four Express Scripts-selected PSAOs that control approximately 70 percent or more of the market for PSAO services with exclusive access to Express Scripts' expansive networks, thus facilitating consolidation and concentration in the PSAO services market;

c)  denying pharmacies in need of PSAO services free choice and a free, open, and competitive market for the same, and instead forcing those pharmacies to obtain PSAO services from the four select PSAOs that the pharmacies either do not want or would prefer to purchase from another PSAO, such as Pharmacy First; and

d)  confining pharmacies' choice of PSAOs to those four PSAOs that, according to Express Scripts' unilateral determination, "best align with" Express Scripts' "organizational objectives" and meet Express Scripts' "terms and conditions," rather than permitting pharmacies to choose from among legitimate competitors a PSAO that will best represent the pharmacies' and patients' objectives and interests.

50.  As a direct and proximate result of the unlawful agreement and other unlawful agreements set forth above, Pharmacy First has been, and will continue to be, irreparably injured and financially damaged in its business and property in that, among other things, Pharmacy First has suffered, and will continue to suffer, significant lost revenue and profits from the loss of existing and prospective pharmacy affiliations and other pharmacy business due to its exclusion from Express Scripts' networks, and resultant impairment of Pharmacy First's good will and reputation.

51.  Pharmacy Firsts' damages constitute injury to competition, an injury of the type the antitrust laws were designed to prevent and were directly caused by that which makes Express Scripts' conduct unlawful thereunder.

52.  Pharmacy First has no adequate remedy at law for the prospective and recurring

injuries and damages that will result from Express Scripts' unlawful conduct if not enjoined.

WHEREFORE, Pharmacy First hereby respectfully requests that judgment be entered in its favor and against Express Scripts, and that this Court enter an Order:

a) preliminarily and permanently enjoining Express Scripts from engaging in anticompetitive and illegal conduct in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, as more fully described herein;

b) awarding Pharmacy First compensatory damages in an amount to be determined at trial;

c) awarding Pharmacy First three times actual damages against Express Scripts for its violations of the Sherman Act;

d) awarding Pharmacy First interest, attorney's fees, and costs incurred herein; and

e) awarding such other and further relief as this Court deems just and proper under the circumstances.

## COUNT II
### Tying Agreement in Violation of the Sherman Act, 15 U.S.C. § 1

53.     Pharmacy First incorporates by reference as though fully set forth herein all of the above paragraphs of the Complaint.

54.     Express Scripts has engaged in an unlawful tying agreement and various other agreements in violation of Section 1 of the Sherman Act by conditioning pharmacy access to Express Scripts' networks of 83 million or more individuals with prescription drug benefits (the tying product) on the purchase of PSAO services from one of Express Scripts' four selected PSAOs (the tied product) that pharmacies either do not want or would prefer to purchase from other PSAOs, such as Pharmacy First.

55.     Access to Express Scripts' networks of 83 million or more individuals with prescription drug benefits, on the one hand, and PSAO services, on the other hand, are two distinct products and/or services.

56.     Express Scripts has unlawfully used, and is continuing to unlawfully use, its

dominant market power to tie those two distinct products and/or services together in at least the following ways:

a) granting pharmacies that use PSAO services access to Express Scripts' networks only on the condition that those pharmacies purchase PSAO services from one of Express Scripts' four select PSAOs; and/or

b) forcing pharmacies to use PSAO services from one of Express Scripts' four select PSAOs by making use of such PSAO services the only viable economic option to access Express Scripts networks, including, but not limited to, by imposing on pharmacies attempting to access Express Scripts' networks directly: (i) network restrictions, (ii) fees, (iii) punitively-low and non-negotiable reimbursement rates, (iv) administrative burdens, and (v) a narrowed list of Express Scripts' selected reconciliation vendors that can be used to process electronic remittance advice from Express Scripts.

57.     Express Scripts has dominant market power in the United States market for prescription drugs and pharmacy services reimbursed by insurance to enable Express Scripts to restrain competition in the market for PSAO services, because, among other things:

a) Express Scripts controls and manages the prescription drug benefits for, and thus controls access by PSAOs and pharmacies to, approximately 83 million or more individuals nationwide, comprising between 30 and 50 percent of the PBM market;

b) PSAOs and pharmacies cannot readily access, or access at all, the individuals in Express Scripts' networks through other means;

c) access to the individuals in Express Scripts' networks is essential because PSAOs and pharmacies must access patients with prescription drug benefits in order to stay in business and compete in the pharmacy market, and there is no reasonably interchangeable substitute readily available for those 83 million or more individuals whose prescription drug benefits are administered by Express Scripts; and

d) given the high degree of consolidation and concentration, high entry barriers, and other characteristics of the PBM market, it is difficult for existing or new PBMs to compete with Express Scripts in administering the prescription drug benefits of the 83 million or more individuals in Express Scripts' networks.

58.     The unlawful tying agreement and other agreements set forth above have foreclosed a substantial volume of commerce in the United States market for PSAO services because, among

14

other things, Pharmacy First and at least 17 of the other approximately 22 PSAOs in the country are precluded from accessing Express Scripts' networks of 83 million or more individuals with prescription drug benefits, which is an essential resource for PSAOs to provide quality and competitive PSAO services to pharmacies.

59.     The unlawful tying agreement and various other agreements set forth above have substantially harmed, and will continue to substantially harm, competition in the United States market for PSAO services by decreasing the availability, quality, and output of PSAO services in at least the following ways:

a)      foreclosing Pharmacy First and at least 17 or more other PSAOs from accessing Express Scripts' expansive networks of the approximately 83 million or more individuals with prescription drug benefits, an essential resource for PSAOs seeking to provide services to pharmacies, and thereby restraining the ability of Pharmacy First and those PSAOs to compete in the PSAO services market;

b)      providing four Express Scripts-selected PSAOs that already control approximately 70 percent of market for PSAO services by number of affiliated pharmacies with exclusive access to Express Scripts' expansive networks, thus facilitating consolidation in the PSAO services market;

c)      denying pharmacies in need of PSAO services free choice and a free, open, and competitive market for the same, and instead forcing those pharmacies to obtain PSAO services from the four select PSAOs that the pharmacies either do not want or would prefer to purchase from another PSAO, such as Pharmacy First; and

d)      confining pharmacies' choice of PSAOs to those four PSAOs that, according to Express Scripts' unilateral determination, "best align with" Express Scripts' "organizational objectives" and meet Express Scripts' "terms and conditions," rather permitting pharmacies to choose from among legitimate competitors a PSAO that will best represent the pharmacies' and patients' objectives and interests.

60.     Express Scripts has a financial interest in, and/or receives an economic benefit from, the sale and provision of PSAO services through its select four PSAOs insofar as Express Scripts, by forcing pharmacies to affiliate with one or more of those four PSAOs, will have reduced

its administrative costs in dealing with independent and other pharmacies, a centralized reimbursement structure, and the opportunity and ability to impose its "organizational objectives" and "terms and conditions" on PSAOs and the pharmacies they represent.

61.     As a direct and proximate result of the unlawful agreement, and various unlawful agreements set forth above, Pharmacy First has been, and will continue to be, irreparably injured and financially damaged in its business and property in that, among other things, Pharmacy First has suffered, and will continue to suffer, significant lost revenue and profits from the loss of existing and prospective pharmacy affiliations and other pharmacy business due to its exclusion from Express Scripts' networks and resultant impairment of Pharmacy First's good will and reputation.

62.     Pharmacy First's damages constitute injury to competition, an injury of the type the antitrust laws were designed to prevent and were directly caused by that which makes Express Scripts' conduct unlawful thereunder.

63.     Pharmacy First has no adequate remedy at law for the prospective and recurring injuries and damages that will result from Express Scripts' unlawful conduct if not enjoined.

WHEREFORE, Pharmacy First hereby respectfully requests that judgment be entered in its favor and against Express Scripts, and that this Court enter an Order:

a) preliminarily and permanently enjoining Express Scripts from engaging in anticompetitive and illegal conduct in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, as more fully described herein;

b) awarding Pharmacy First compensatory damages in an amount to be determined at trial;

c) awarding Pharmacy First three times actual damages against Express Scripts for its violations of Section 1 of the Sherman Act;

d) awarding Pharmacy First interest, attorney's fees, and costs incurred herein; and

e) awarding such other and further relief as this Court deems just and proper under the circumstances.

## COUNT III
### Tortious Interference

64.     Pharmacy First incorporates by reference as though fully set forth herein all of the

above paragraphs of the Complaint.

65.     Pharmacy First had, and still has, contracts with its affiliated pharmacies, and/or

valid and reasonable business expectancies in the provision of PSAO and other services to

pharmacies with which it is already affiliated and those pharmacies who desire to become affiliated

with it.

66.     Express Scripts knew and was aware of Pharmacy First's contracts and/or

expectancies.

67.     Express Scripts intentionally interfered with Pharmacy First's contracts and/or

expectancies by, among other things:

> a)     suspending affiliation of new pharmacies with Express Scripts through Pharmacy First while the PSAO Services Agreement was still in place;
>
> b)     advising pharmacies affiliated with Pharmacy First that Express Scripts will be terminating its relationship with Pharmacy First before Express Scripts provided notice of any such termination to Pharmacy First;
>
> c)     inducing and encouraging pharmacies already affiliated with, and/or pharmacies taking steps to become affiliated with, Pharmacy First to instead affiliate with one of Express Scripts' four select PSAOs; and
>
> d)     refusing to recognize Pharmacy First as a provider of reconciliation services to its pharmacies.

68.     Express Scripts was not justified in interfering with, and used improper means to

interfere with, Pharmacy First's contracts and/or expectancies.

69.     As a direct and proximate result of Express Scripts' intentional interference,

Pharmacy First has suffered, and will continue to suffer, significant injury and damages, including,

but not limited to, lost revenue and profits from the termination of contracts with pharmacies and/or the loss of existing and prospective pharmacy affiliations and other pharmacy business.

70.     Express Scripts' tortious interference was intentional, wanton, willful, outrageous, deliberate, done with an evil motive, and in reckless disregard for and indifference to the interests and rights of Pharmacy First and the pharmacies affiliated therewith, thus warranting an award of punitive damages in an amount to be determined at trial.

WHEREFORE, Pharmacy First hereby respectfully requests that judgment be entered in its favor and against Express Scripts, and that this Court enter an Order:

    a) awarding Pharmacy First compensatory damages in an amount to be determined at trial;

    b) awarding Pharmacy First punitive damages against Express Scripts;

    c) awarding Pharmacy First interest, attorney's fees, and costs incurred herein; and

    d) awarding such other and further relief as this Court deems just and proper under the circumstances.

**COUNT IV**
**Breach of Implied Covenant of**
**Good Faith and Fair Dealing**

71.     Pharmacy First incorporates by reference as though fully set forth herein all of the above paragraphs of the Complaint.

72.     The PSAO Services Agreement was at all times and remains a valid contract supported by adequate consideration.

73.     Pharmacy First has performed its obligations under the PSAO Services Agreement.

74.     The law implies a covenant of good faith and fair dealing into the terms of the PSAO Services Agreement.

75.     Defendant Express Scripts breached that covenant of good faith and fair dealing by, among other things:

a)     suspending affiliation of new pharmacies with Express Scripts through Pharmacy First while the PSAO Services Agreement was still in place;

b)     advising pharmacies affiliated with Pharmacy First that Express Scripts will be terminating its relationship with Pharmacy First before Express Scripts provided notice of any such termination to Pharmacy First;

c)     inducing and encouraging pharmacies already affiliated with, and/or pharmacies taking steps to become affiliated with, Pharmacy First to instead affiliate with one of Express Scripts' four select PSAOs; and

d)     refusing to recognize Pharmacy First as a provider of reconciliation services to its pharmacies.

76.     As a direct and proximate result of Express Scripts' actions in breaching the implied covenant of good faith and fair dealing, Pharmacy First has suffered and will continue to suffer significant damages, including, but not limited to, lost revenue and profits from the termination of contracts with pharmacies and/or the loss of existing and prospective pharmacy affiliations and other pharmacy business.

WHEREFORE, Pharmacy First hereby respectfully requests that judgment be entered in its favor and against Express Scripts, and that this Court enter an Order:

a)     awarding Pharmacy First compensatory damages in an amount to be determined at trial;

b)     awarding Pharmacy First interest, attorney's fees, and costs incurred herein; and

c)     awarding for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT V
## Injunctive Relief

77.     Pharmacy First incorporates by reference as though fully set forth herein all of the above paragraphs of the Complaint.

78.     Pharmacy First has sustained, and will continue to sustain, irreparable injuries caused by Express Scripts' conduct set forth herein.

79.     Pharmacy First has no adequate remedy at law for the prospective and recurring injuries and damages that will be proximately caused by Express Scripts' unlawful conduct alleged herein.

80.     Pharmacy First is likely to succeed on the merits of all of its claims against Express Scripts.

81.     Pharmacy First is entitled to a preliminary and permanent injunction prohibiting Express Scripts from, among other things:

> a)     terminating the PSAO Services Agreement;
>
> b)     entering into and maintaining an agreement and other agreements with the four Express Scripts selected PSAOs, and/or any other person or entity, to be the exclusive provider(s) of PSAO services to pharmacies seeking to access Express Scripts' networks;
>
> c)     refusing to recognize Pharmacy First and/or any other PSAO as the PSAO of their respective affiliated pharmacies;
>
> d)     refusing to recognize Pharmacy First and/or any other similar third-party vendors as a provider of reconciliation services to their respective affiliated pharmacies;
>
> e)     conditioning pharmacy access to Express Scripts networks on pharmacies purchasing PSAO services from the four Express Scripts selected PSAOs, and/or any other person or entity; and
>
> f)     forcing pharmacies to use PSAO services from the four Express Scripts selected PSAOs, and/or any other person or entity by imposing fees, lower reimbursement rates, network restrictions, administrative burdens, limited choice of reconciliation vendors, and/or any other such measures on pharmacies attempting to access Express Scripts' networks directly.

WHEREFORE, Pharmacy First hereby respectfully requests that judgment be entered in its favor and against Express Scripts as follows:

a)  An order preliminarily and permanently enjoining Express Scripts from engaging the conduct alleged in paragraph 81(a)-(f) herein;

b)  An order awarding Pharmacy First interest, attorney's fees, and costs incurred herein; and

c)  An order awarding such other and further relief as this Court deems just and proper under the circumstances.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Pharmacy First hereby demands a trial by jury as to all claims and all issues properly so triable.

Respectfully submitted,

**LEWIS RICE LLC**

Dated: June 21, 2018

By:___/s/   Winthrop B. Reed, III_____
Winthrop B. Reed, III, #42840MO
Richard B. Walsh, Jr., #33523MO
R. Taylor Matthews III, #60936MO
Edward T. Pivin, #64086MO

600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
Telephone:  (314) 444-7600
Facsimile:  (314) 241-6056
E-mail:  wreed@lewisrice.com
            rwalsh@lewisrice.com
            tmatthews@lewisrice.com
            epivin@lewisrice.com

*Attorneys for Plaintiff*